Addie Lee DENTON, Appellant,

v.

.MONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 30, 1964.

A. Jack May, Danville, for appellant.

Robert Matthews, Atty. Gen., Martin Glazer, Asst. Atty. Gen., P. J. Clarke, Sr., Boyle County Atty., for appellee.

MOREMEN, Judge.

This is an appeal from a judgment by which Addie Lee Denton was adjudged to be mentally ill, dangerous, uncontrollable and incompetent to manage her own affairs. The record is very unsatisfactory, but a brief narrative statement of the evidence and the proceedings had was filed and from this and from various uncontroverted statements in the brief we glean the following facts: Addie Lee Denton had completed a temporary thirty-five day commitment for observation under KRS 202.120. Thereafter a certificate by two staff physicians of the Kentucky State Hospital was filed in the circuit court in which they stated it was their opinion that appellant was mentally ill, and they recommended confinement. This

certificate was treated as a petition under KRS 202.240 which deals with procedures in cases of formal inquests.

At about eleven o'clock a. m. on the day of the inquest, Hon. A. Jack May was appointed counsel for appellant. The inquest began about one-thirty in the afternoon. During the interim counsel informed the court that an objection would be raised as to the reading of any affidavits by doctors as to the mental condition of appellant. At the trial the only evidence introduced concerning appellant's mental state was the affidavits of two physicians from the Kentucky State Hospital which were read by the county attorney to the jury.

At the outset we should examine the nature of an inquest. We have held that a lunacy inquest is a special proceeding neither wholly civil nor wholly criminal. We have also recognized that the public is concerned in any trial which involves personal liberty. Therefore, an inquest has been regarded generally as a quasi criminal proceeding. Cadden v. Commonwealth, Ky., 242 S.W.2d 409.

Although lunacy inquests are not concerned with criminal intent or criminal acts they may result in depriving the defendant of his liberty and his property. This deprival should be obtained only by the due processes of law under constitutional guarantees.

We have therefore concluded that when a proceeding may lead to the loss of personal liberty, the defendant in that proceeding should be afforded the same constitutional protection as is given to the accused in a criminal prosecution.

KRS 202.140 provides, among other things, that if the petition filed requests that the defendant be adjudged incompetent, the court shall impanel a jury and administer a special oath to them and instruct them upon the whole case. Subsection (3) of that section reads:

"In any case the court may in its discretion require other evidence in

addition to the petition and the certificate of the hospital staff, and may require the attendance at the hearing of the certifying staff members and any other witnesses. The defendant or anyone representing him may summon witnesses and present evidence as in other cases."

In the case at bar, and presumably in other cases (see opinion Attorney General 37.777) it has been assumed that it is not necessary for the examining physicians to appear in court and testify. The foregoing section of the statute attempts (and apparently has achieved) a shifting of the burden of proof from the Commonwealth to the defendant. Certificates of physicians are deemed sufficient to sustain a verdict and the duty is placed upon the defendant to summons witnesses and "present evidence as in other cases." The fact, in criminal cases, is that the duty is upon the Commonwealth to prove its case.

The first sentence of § 11 of our Constitution reads:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

This right of confrontation is also guaranteed by the Sixth Amendment to the Constitution of the United States.

 We recognize that the constitutional command to guarantee "equal protection of the laws" means equal rights for all those similarly situated and that some classification is permitted. But we cannot assume that the bare accusation of insanity acts as a means of proper classification so that a person so accused may be deprived of his liberty under this singular statute without granting to him his full constitutional guarantees. The fact that all persons

so accused may be similarly tried is no answer. The accusation is not a conviction.

We have concluded therefore that the burden of proof under KRS 202.140 and the manner of proceeding and the rules of evidence should be the same as those in any criminal or quasi criminal proceeding and the court erred in admitting the evidence of the doctors by certificate or affidavit over objection of appellant's counsel.

Judgment reversed.