SUPERINTENDENT OF WORCESTER STATE HOSPITAL
*vs.* LAURA HAGBERG.

Worcester. December 7, 1977. — January 20, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Rules of Appellate Procedure. Practice, Civil,* Commitment of mentally ill person, Appeal. *Mental Health. Moot Question. Words,* "Clear and convincing."

Rule 9 (c) of the Massachusetts Rules of Appellate Procedure does not require the assembly of a record within forty days after the filing of a notice of appeal but requires an appellant to "take any action necessary, or reasonably requested by the clerk" within forty days to make assembly possible. [273-274]

This court expressed its opinion on the propriety of a commitment order under G. L. c. 123, §§ 7 and 8, although the term of the commitment had expired, where the issue was of public importance capable of repetition, yet evading review, and was fully argued in an adversary proceeding. [274]

In a proceeding to commit a defendant to a mental health facility under G. L. c. 123, §§ 7 and 8, the standard of proof is proof beyond a reasonable doubt rather than clear and convincing proof. [275-277]

PETITION filed in the Central District Court of Worcester on September 19, 1975.

The case was heard by *Gould, J.*

*Stephen Schultz,* Assistant Attorney General, for the plaintiff.

*Darragh K. Kasakoff* for the defendant.

*Jan C. Costello,* for Mental Patients Advocacy Project, amicus curiae, submitted a brief.

BRAUCHER, J. The Appellate Division of the District Courts, Western District, decided that, in a proceeding to commit the defendant to a mental health facility under G. L. c. 123, §§ 7, 8, the standard of proof is "proof beyond a reasonable doubt" rather than "clear and convincing proof." The plaintiff, superintendent of the Worcester State Hospital (hospital), appealed. We hold that (1) the appeal is properly before us notwithstanding delay in assembling the record, (2) the issue is one "capable of repetition, yet evading review," and should be decided even though the order appealed may be moot, and (3) "proof beyond a reasonable doubt" is the proper standard.

The petition was filed in the Central District Court of Worcester on September 19, 1975. After hearing, the judge filed a memorandum of findings and decision and on November 26, 1975, ordered the defendant committed to the hospital for a period not to exceed six months, expiring May 20, 1976. On report to the Appellate Division the order was reversed and the petition dismissed by a decision and order filed December 16, 1976. The plaintiff filed a notice of appeal to this court on February 4, 1977.

We summarize the facts shown by the report. The defendant, a seventy-year old married woman, was committed under G. L. c. 123, § 12, on September 12, 1975, and was then disoriented and unable to care for herself because of age and infirmity. At the time of the hearing on November 20, 1975, she was generally improved but suffering from organic brain syndrome and generalized and cerebral arteriosclerosis. She was mentally ill and unable to care for herself and there was a likelihood of serious harm to herself.

She would be a fit subject for alternative nursing home care in the community, if such a facility became available.

The defendant requested the following ruling: "Petitioner-Superintendent has the burden of proof to show beyond a reasonable doubt that respondent is mentally ill and that respondent's discharge would create a likelihood of serious harm." The judge acted as follows: "Denied, this ruling is denied because the test on District Court procedure at the present time is that of clear and convincing proof as distinguished from proof beyond a reasonable doubt." The Appellate Division held that the standard to be applied is that of proof beyond a reasonable doubt.

1. *The defendant's motion to dismiss the appeal.* On March 24, 1977, more than forty days after the plaintiff filed his notice of appeal to this court, the defendant moved under Mass. R. A. P. 10 (c), as amended, 367 Mass. 919 (1975), to dismiss the appeal for failure to assemble the record and docket the appeal in timely fashion, citing *Westinghouse Elec. Supply Co.* v. *Healy Corp.*, 5 Mass. App. Ct. 43 (1977). The trial judge denied the motion and the record was assembled and docketed on June 3, 1977. No application was made to this court or a single justice thereof for extension of the time for assembling the record and docketing the appeal.

Under Mass. R. A. P. 9 (a), 365 Mass. 851 (1974), the clerk of the District Court was to assemble the record "as soon as may be after the filing of the notice of appeal." No specific time period is prescribed for the assembly. Under rule 9 (c)[1] the plaintiff's obligation, to be performed "within forty days after filing the notice of appeal," was to "take any action necessary, or reasonably requested by the clerk, to enable the clerk of the lower court to assemble the record."

As in *Gilmore* v. *Gilmore*, 369 Mass. 598, 603 (1976), the defendant cites no action that the plantiff failed to take to

---

[1] 365 Mass. 851 (1974): "(c) Appellant's Obligation. In addition to complying with the provisions of Rule 8(b), each appellant shall within forty days after filing the notice of appeal take any action necessary, or reasonably requested by the clerk, to enable the clerk of the lower court to assemble the record, and a single record shall be assembled."

cause timely assembly. Indeed, the plaintiff asserts that the reason for the delay was that the clerk's office had lost the appeal papers, and that the judge declared that the court had been derelict and that the plaintiff had not been at all derelict. The record before us shows only that the motion to dismiss the appeal was denied. We said in the *Gilmore* case, "We are not inclined to dismiss an appeal for what may be termed an inconsequential breach amounting to only a short period of time, especially when we find no indication in the record that the delay is attributable to the appellant." *Id.*

The *Gilmore* opinion can be read as interpreting rule 9 (c) to lay down a "specified time" of forty days for assembly of the record, rather than for taking "any action" to make assembly possible. See *id.* at 602. The former reading is explicit in *Westinghouse Elec. Supply Co.* v. *Healy Corp.*, 5 Mass. App. Ct. 43, 47-50, 55 n.24 (1977), following Fed. R.A.P. 11(a), which does require that the record "be transmitted to the court of appeals within 40 days after the filing of the notice of appeal." We take this occasion to point out the difference between the Federal rule and our rule: our rule does not require the record to be assembled in forty days. Hence no violation of our rule is shown in the present case.

2. *Mootness.* The commitment order expired on May 20, 1976, before the Appellate Division decided the appeal. The plaintiff has submitted affidavits showing that a subsequent petition for the commitment of the defendant was allowed on August 17, 1977, to expire in six months. Thus the decision appealed from no longer has any operative effect. But the Appellate Division in the present case declined to follow two previous Appellate Division decisions. The issue is one of public importance, capable of repetition, yet evading review. It has been fully argued to us in an adversary proceeding and we think it appropriate that we express our opinion. *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973). See *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298-299 (1975).

3. *Standard of proof.* The Appellate Division relied on *Andrews, petitioner*, 368 Mass. 468, 486-491 (1975), where we held that commitment of a "sexually dangerous person" under G. L. c. 123A must rest on proof beyond a reasonable doubt. In that case we compared the procedures under G. L. c. 123A with those under G. L. c. 123, and held that "any significant procedural rights granted to persons involuntarily committed under c. 123 must be extended to persons involuntarily committed under c. 123A, § 6," at least when the commitment extends beyond the maximum criminal sentence. *Id.* at 481. But we found cross-comparison of little help with respect to burden of proof. *Id.* at 486. Our discussion was primarily directed to the need for "a standard of proof higher than a mere preponderance of the evidence." *Id.* at 490.

Here it is common ground that there is a need for such a higher standard. The only controversy is between "clear and convincing proof" and "proof beyond a reasonable doubt." Traditionally, "clear and convincing proof" in civil cases has related to findings and rulings of a judge rather than a jury, principally involving attempts to prove by oral evidence matters ordinarily required to be proved by written evidence. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 870 n.10 (1975); *id.* at 875-876 (separate opinion); McCormick, Evidence § 340 (2d ed. 1972); 9 J. Wigmore, Evidence § 2498 (3d ed. 1940). In such cases we have sometimes treated the "clear and convincing" standard as equivalent to the "reasonable doubt" standard. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 316-317 (1871). *German Am. Ins. Co.* v. *Davis*, 131 Mass. 316, 317 (1881). Indeed, the language of the cases cited suggests that proof must be even more rigorous than proof in the ordinary criminal case. Cf. Restatement (Second) of Contracts § 197, Comment b (Tent. Drafts 1-7, 1973).

Our modern cases, however, treat clear and convincing proof as less demanding than proof beyond a reasonable doubt and suggest doubt as to the utility of the lesser standard. See *Kidder* v. *Greenman*, 283 Mass. 601, 613-614

(1933). In the *Stone* case we said, "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." 367 Mass. at 871. In *Callahan* v. *Westinghouse Broadcasting Co.,* 372 Mass. 582, 588 n.3 (1977), we approved a jury charge, where clear and convincing proof was required, in terms of a burden of convincing the jury "that the facts asserted are highly probably true," that the "probability" that they are true "is substantially greater" than the probability that they are false, and a belief "that there is a high degree of probability that the facts are true." One Justice dissented on the ground that the "elusive intermediate level of burden of persuasion" was too "difficult to articulate, even by an appellate court of last resort." *Id.* at 589.

In *Andrews, peitioner, supra,* 368 Mass. at 488, we thought that Federal precedents led "inexorably to the conclusion that a person who stands to lose his freedom and to be labeled sexually dangerous is entitled to the benefit of the same stringent standard of proof as that required in criminal cases." Here the defendant stood to lose her freedom and to be labeled mentally ill. The plaintiff argues that the latter label entails less stigma than the former. Mental illness does not carry the same stigma it once did, but we are not prepared to say that the stigma has entirely disappeared. Certainly the loss of freedom on commitment varies considerably in varied situations. We do not rest on any precise calibration of freedom or stigma. Instead, we doubt the utility of employing three standards of proof when two seem quite enough. In view of "the generally similar function and effects" of G. L. c. 123 and G. L. c. 123A, we think the standard of proof beyond a reasonable doubt applies under both. See *Andrews, petitioner, supra,* 368 Mass. at 480.

We note that the standard of proof beyond a reasonable doubt has been employed in cases of commitment for mental illness in a growing number of other jurisdictions. *In re*

*Ballay,* 482 F.2d 648, 653-669 (D.C. Cir. 1973). *Suzuki* v. *Quisenberry,* 411 F. Supp. 1113, 1132 (D. Haw. 1976). *Davis* v. *Watkins,* 384 F. Supp. 1196, 1199 (N.D. Ohio 1974). *Lessard* v. *Schmidt,* 349 F. Supp. 1078, 1095 (E.D. Wis. 1972), vacated on other grounds, 414 U.S. 473 (1974). *In re Hodges,* 325 A.2d 605, 607 (D.C. Ct. App. 1974). *Denton* v. *Commonwealth,* 383 S.W.2d 681, 683 (Ky. 1964). *Lausche* v. *Commissioner of Pub. Welfare,* 302 Minn. 65, 69 (1974), cert. denied, 420 U.S. 993 (1975). *Proctor* v. *Butler,* 117 N.H. 924 (1977). *In re Perry,* 137 N.J. Eq. 161, 164 (1945). *State* v. *O'Neill,* 274 Or. 59 (1976). We find unpersuasive expressions of doubt whether such proof is feasible. *Stamus* v. *Leonhardt,* 414 F. Supp. 439, 449 (S.D. Iowa 1976). *Doremus* v. *Farrell,* 407 F. Supp. 509, 516-517 (D. Neb. 1975). *Bartley* v. *Kremens,* 402 F. Supp. 1039, 1052-1053 (E.D. Pa. 1975), vacated on other grounds, 431 U.S. 119 (1977). *Lynch* v. *Baxley,* 386 F. Supp. 378, 393 n.12 (M.D. Ala. 1974). *In re Beverly,* 342 So. 2d 481, 488 (Fla. 1977). *People* v. *Sansone,* 18 Ill. App. 3d 315, 325-326 (1974). *Matter of Valdez,* 88 N.M. 338, 342-343 (1975). *State ex rel. Hawks* v. *Lazaro,*      W. Va.      (1974).[a]

*Order of Appellate Division affirmed.*

---

[a] 202 S.E.2d 109, 126-127 (1974).