SANDRA A. GILMORE vs. JEROLD P. GILMORE.

Middlesex. December 5, 1975. — January 28, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

Divorce, Appeal, Custody of child. Probate Court, Decree, Appeal. Massachusetts Rules of Appellate Procedure.

Where a decree nisi of divorce was granted to a wife on her libel and a decree nisi which included an award of custody of the parties' three minor children was granted to her husband on his cross libel, a stay of the decree nisi on the husband's libel was effective to preserve the wife's right to appeal the custody award; it was not necessary for the wife to obtain an additional stay of the decree nisi on her own libel. [599-601]

Dismissal of an appeal from a custody award in a divorce proceeding on the ground that the appellant failed to designate the record within fifteen days of the filing of the transcript in accordance with Rule 1:02 (a) of the Rules of the Supreme Judicial Court was not required where such failure did not result in significant delay or prejudice [601-602]; nor was dismissal required by Rule 10 (c) of the Massachusetts Rules of Appellate Procedure for failure to assemble the record within forty days as required by Rule 9 (c), where such failure could not be attributed to the appellant and the delay amounted to only a short period of time [602-603].

In a divorce proceeding where custody of the parties' three minor children was in issue it was error for the probate judge to refuse to allow a guardian ad litem, appointed pursuant to G. L. c. 215, § 56A, upon whose report the judge relied in his decision awarding custody, to testify and to be cross-examined by the parties. [603-606]

LIBEL for divorce filed in the Probate Court for the county of Middlesex on December 5, 1973.

The case was heard by Freedman, J.

The Supreme Judicial Court granted a request for direct appellate review.

Jeffrey J. Binder (Martin L. Aronson with him) for Sandra A. Gilmore.

Edward M. Mahlowitz for Jerold P. Gilmore.

HENNESSEY, C.J. This appeal arises from divorce proceedings instituted in the Probate Court for Middlesex County. On April 18, 1973, the wife (Sandra) filed a libel for divorce, and on December 5, 1973, the husband (Jerold) filed a cross libel. The libels were both heard by a judge of the Probate Court, and on March 7, 1974, a decree nisi on the ground of cruel and abusive treatment was granted to Sandra on her libel and to Jerold on his cross libel. Custody of the parties' three minor children was awarded to Jerold pursuant to his libel. Sandra contends on this appeal that this custody award to Jerold should be set aside since she was not permitted to cross-examine the guardian ad litem who conducted an investigation and filed a report, pursuant to G. L. c. 215, § 56A, relating to the father's right to visitation and the custody of the Gilmore children. It is our opinion that the denial of the right to cross-examine the guardian ad litem did constitute error and that, consequently, the case must be remanded for a new hearing on the issue of custody.

Before discussing the merits of Sandra's argument, we respond briefly to the three procedural issues raised by Jerold. It is his contention that since no stay of the decree nisi on Sandra's libel was entered as authorized by G. L. c. 215, §§ 23, 24, the passage of six months has rendered the divorce absolute and thus, under *Sloane* v. *Sloane,* 349 Mass. 318 (1965), no issue for appeal is presented. This argument is without merit.

As noted above, the probate judge granted a decree nisi for divorce to Jerold and awarded custody to him pursuant to his libel. Sandra moved for and was granted on March 8, 1974, a stay of the decree nisi on Jerold's libel pending appeal. Although it is not free from ambiguity, we understand the Probate Court's stay, set forth below,[1]

---

[1] The stay provided in part:

(1) "Decree nisi of March 7, 1974, pending appeal to the Appeals Court of the Commonwealth is stayed."

(2) "All other portions of the decree nisi are stayed until March 14, 1974, to allow libellee to appeal to the Appeals Court with respect to a stay of all the other portions of said decree nisi."

to mean that Sandra was granted (1) a stay of the decree nisi for divorce pending appeal (first paragraph) and (2) a temporary stay until March 14, 1974, of all other portions of the decree nisi, including the transfer of custody of the children to Jerold, pending appeal (second paragraph). A single justice of this court, on March 20, 1974, refused to extend the temporary stay provided for in the second paragraph, but did not set aside the stay of the decree nisi for divorce. Thus, Sandra's right to appeal has not been foreclosed, since the decree nisi on Jerold's libel, which contained the custody award, did not become absolute on the expiration of six months. It was not necessary for Sandra to obtain in addition a second stay of the decree nisi granted on her own libel, for she raises no argument that the divorce was granted improperly, but argues only that the custody award made in Jerold's libel should be set aside. Cf. *Blitzer* v. *Blitzer*, 361 Mass. 780, 784-785 (1972). In short, because an effective stay, as provided by G. L. c. 215, §§ 23, 24, was obtained on Jerold's libel, the doctrine of *Sloane* v. *Sloane, supra,* is inapplicable and Sandra's appeal of the custody award is properly before us.[2]

Jerold also argues that Sandra's appeal should be dismissed for her failure to designate the record in accordance with Rule 1:02 of the Rules of the Supreme Judicial Court, as amended on October 4, 1967 (353 Mass. 804 [1967]). Jerold moved to dismiss the appeal on this ground, and on October 16, 1974, his motion was denied by the probate judge. We do not believe that the judge abused his discretion by refusing to dismiss the appeal.

After the probate judge entered a decree nisi on the cross libels for divorce, Sandra filed a timely claim of ap-

---

[2] In light of our interpretation of the stay granted by the probate judge, we need express no opinion as to whether in the absence of an effective stay, the custody award could be appealed without Sandra's first bringing a petition under G. L. c. 208, § 28, to modify the custody award.

peal. Based on the parties' briefs, we assume that the transcript was filed sometime between June 2 and June 4, 1974. Under Rule 1:02 (2),[3] the appellant was required to file a designation within fifteen days of the filing of the transcript. Although this was not done, we do not think a dismissal of the appeal is required. See *George v. Coolidge Bank & Trust Co.*, 360 Mass. 635, 637-638 (1971). Supreme Judicial Court Rule 1:07, 351 Mass. 736 (1966), provides in part: "Failure to do any act therein prescribed [1:01-1:06] shall not require dismissal of the appeal or of the report but shall be ground for such orders as the trial court or the Supreme Judicial Court shall deem appropriate which may include dismissal." Considering the latitude provided by Rule 1:07, we cannot say that Sandra's failure to comply with the procedural requirements set forth in Rule 1:02 should require a forfeiture of her appeal. As we said in *Schulte v. Director of the Div. of Employment Security, ante,* 74 (1975): "Sloppiness in following a prescribed procedure for appeal is not encouraged or condoned, but at the same time a distinction is taken between serious missteps and relatively innocuous ones." *Id.* at 79. In the present case, we are not convinced that Sandra's failure to designate the transcript resulted in significant delay or prejudice, and, thus, her mistake should not be considered fatal. See *Schulte, supra* at 80-81.

Jerold next argues that it was error for the probate judge to allow Sandra's motion to assemble the record in accordance with Rule 9 of Mass. R. A. P., 365 Mass. 851 (1974). Again, we must disagree.

Sandra claimed her appeal on March 13, 1974, and, thus, according to Mass. R. Civ. P. 1A, par. 7, 365 Mass. 731 (1974),[4] she should have proceeded in accordance

---

[3] Sandra was bound by the rules of procedure in effect prior to July 1, 1974, since she claimed her appeal before July 1. Mass. R. Civ. P. 1A, par. 7, 365 Mass. 731 (1974). See note 4, *infra.*

[4] The Transitional Rule, Mass. R. Civ. P. 1A, par. 7, 365 Mass. 731 (1974), provides in part: "[R]eview of all other bills of exceptions,

with the rules in effect prior to July, 1974. Nevertheless, we do not believe that the probate judge was incorrect in allowing her motion to assemble the record under post-July 1 rules. The new Massachusetts Rules of Civil and Appellate Procedure are designed to simplify civil practice in the Commonwealth and are to be interpreted so as "to secure the just, speedy, and inexpensive determination of every action." Mass. R. Civ. P. 1, 365 Mass. 730 (1974). It can reasonably be assumed that requiring the appellant to proceed under pre-July rules would result in both added delay and expense. The granting of Sandra's motion worked no detriment to Jerold, since the appeal process was presumably expedited under the new rules. To proceed under Rule 9 was especially sensible in light of Sandra's prior failure seasonably to designate the record, for by following this procedure she enhanced the likelihood of a speedy appeal.

Nor do we agree with Jerold's final procedural argument that Sandra's appeal should be dismissed on the ground that the record was not assembled within forty days as required by Mass. R. A. P. 9 (c), 365 Mass. 851 (1974).[5] Although Mass. R. A. P. 10 (c), as amended, 367 Mass. 919 (1975), calls for dismissal if an appellant fails to comply with the requirements of Rule 9 (c) concerning assembly of the record, we interpret this rule as requiring dismissal only when the failure to assemble the record within the specified time can be attributed to the appellant. Any other result would unduly punish a litigant for circumstances beyond his or her control. Furthermore, dismissal clearly is not mandatory in any case,

and all appeals claimed before July 1, shall follow pre-July 1 procedure . . . ."

[5] Massachusetts Rules of Appellate Procedure 9 (c) reads: "In addition to complying with the provisions of Rule 8 (b) [ordering the transcript], each appellant shall within forty days after filing the notice of appeal take any action necessary or reasonably requested by the clerk, to enable the clerk of the lower court to assemble the record, and a single record shall be assembled."

because Mass. R. A. P. 3 (a), 365 Mass. 845 (1974), provides in part: "Failure of an appellant to take any step other than the timely filing of a notice of appeal shall not affect the validity of the appeal, but shall be ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal."

It would appear that in the present case the record was not assembled until January 29, 1975, more than fifty days after Sandra's motion to assemble the record in accordance with Rule 9 was allowed. Jerold cites no action that Sandra failed to take to cause timely assembly. We are not inclined to dismiss an appeal for what may be termed an inconsequential breach amounting to only a short period of time, especially when we find no indication in the record that the delay is attributable to the appellant.

Turning to the merits of Sandra's argument, we hold that it was error for the probate judge to deny Sandra the opportunity to cross-examine the guardian ad litem appointed pursuant to G. L. c. 215, § 56A.[6] In light of the probate judge's apparent reliance on the guardian ad litem's investigative report,[7] we believe that, consistent with principles of fundamental fairness, cross-examination of the investigator should be permitted.

---

[6] General Laws c. 215, § 56A, provides in part: "Any judge of a probate court may appoint a guardian ad litem to investigate the facts in any proceeding pending in said court relating to or involving questions as to the care, custody or maintenance of minor children and as to any matter involving domestic relations except those for the investigation of which provision is made by section sixteen of chapter two hundred and eight. Said guardian ad litem shall, before final decree in such proceeding, report in writing to the court the results of the investigation, and such report shall be open to inspection to all the parties in such proceeding or their attorneys. . . ."

[7] The probate judge received the report in evidence and said that he would "consider it as prima facie evidence or for whatever . . . worth . . . the Supreme Court has held the Probate Court may give to such a report."

We are mindful of the court's need for assistance in arriving at a just resolution of custody cases. There is no question that court-appointed investigators can help a judge to determine what is in the best interests of a child, "[t]he governing principle by which the court must be guided." *Hersey* v. *Hersey*, 271 Mass. 545, 555 (1930). In order to provide the judge with needed information about a child's family life, G. L. c. 215, § 56A, *supra* n.6, authorizes a probate judge to appoint a guardian ad litem to investigate the facts relating to the care and custody of the minor children and other domestic relations matters. The statute requires that the guardian ad litem's report be in writing and be available to all the parties. Our prior decisions indicate approval of this procedure and establish that it is proper for the judge to make use of an investigator's report in arriving at his decision. *Jones* v. *Jones*, 349 Mass. 259, 264 (1965). *Jenkins* v. *Jenkins*, 304 Mass. 248, 253 (1939). Nonetheless, neither G. L. c. 215, § 56A, nor our prior cases address the issue before us today — whether the investigator must be available for cross-examination.

In the present case, the court-appointed guardian ad litem, an attorney,[8] interviewed numerous persons, including the parties' relatives, neighbors and friends. His report was filed with the court and, at trial, many of those interviewed during the investigation testified. Although the report focused on the question of the father's visitation rights, it fairly can be inferred from the judge's comments at trial that he relied on this report in determining the issue of custody. Despite this reliance on the report, the probate judge, over objection of Sandra's counsel, refused to allow the guardian ad litem to testify. This in our opinion constituted error.

In a custody proceeding, a judge makes a determination as to what is in the best interests of the child on the basis

---

[8] The record does not indicate whether the guardian ad litem has had any professional training in the behavioral sciences.

of facts presented at trial as well as facts gathered by the court-appointed investigators. The need for accurate, objective information is of foremost importance in this process. In order to determine adequately the reliability and accuracy of a report, we believe that, as a matter of sound judicial policy, the parties should have the opportunity to rebut the report, including the right to cross-examine the investigator.[9] To promote a fair fact-finding process, cross-examination of the investigator should be permitted, subject to the rules of evidence, so that the credibility, bias, or prejudice of the investigator may be tested and the weight to be given to his report may be determined. This rule should prevail whether or not the parties consent to the investigation.

The position we announce today is consistent with the modern approach adopted in other jurisdictions which have considered the problem in the context of custody, adoption, or neglect proceedings. See, e.g., *Fewel* v. *Fewel*, 23 Cal. 2d 431 (1943); *Mazur* v. *Lazarus*, 196 A.2d 477 (D.C. Ct. App. 1964); *Daitoku* v. *Daitoku*, 39 Hawaii 276 (1952); *Yearsley* v. *Yearsley*, 94 Idaho 667 (1972); *In re Dependency of Rosmis*, 26 Ill. App. 2d 226 (1960); *Williams* v. *Williams*, 8 Ill. App. 2d 1 (1955); *State ex rel. Fisher* v. *Devins*, 294 Minn. 496 (1972); *Commonwealth ex rel. Kuntz* v. *Stackhouse*, 176 Pa. Super. 361 (1954); *State* v. *Lance*, 23 Utah 2d 407 (1970);

---

[9] We note that Rule 706 of the Federal Rules of Evidence provides that a court-appointed expert may be called to testify by the court or any party and shall be subject to cross-examination by each party.

We intend no implication that such a broad privilege of confrontation should apply to a master (see, e.g., Mass. R. Civ. P. 53, 365 Mass. 817 [1974]), who has filed a report with the court, although examination of the master on limited issues has, of course, been permitted in some cases in the past. In such instances inquiry into the reasoning processes or possible bias of the master has not been permitted; inquiry has been limited to factual matters, such as the identity of witnesses who appeared before the master and, in cases where testimony of a witness before the jury is allegedly inconsistent, the content of prior testimony before the master.

Annot., 35 A.L.R. 2d 629 (1954, 1969, Supp. 1975), and cases cited therein. It also accords with the approach advocated by legal commentators. See, e.g., Foster & Freed, Child Custody (Part II), 39 N.Y.U. L. Rev. 615, 620 (1964); Comment, Use of Extra-Record Information in Custody Cases, 24 U. Chi. L. Rev. 349 (1957).

We remand the case for a new hearing on the custody issue, to be conducted in accordance with the conclusions reached in this opinion. We do not at this time vacate the prior custody order, but rather leave to the probate judge any possible change in that order.

*So ordered.*